IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>for the use and benefit of<br>STEEL-FAB, INC., a Massachusetts<br>corporation, | )<br>)<br>)<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | )<br>) | Case No. CIV-04-440-P |
| WYNN CONSTRUCTION COMPANY,<br>INC., and Oklahoma Corporation, and<br>ST. PAUL FIRE AND MARINE<br>INSURANCE COMPANY, a Minnesota<br>corporation, | )<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

## ORDER and OPINION

Before the Court are the parties' Motions in Limine on the following issues:

1. The Eichleay formula;
2. The Johnson Machine v. Wynn litigation (Pltf. Ex. 26);
3. Documents relating to the alternative design suggested by Steel-Fab (Pltf. Ex. 10-A to 10-K);
4. Wynn's "cut-and-pasted" letter with excerpts from a Steel-Fab letter (Pltf. Ex. 28-E);
5. Documents relating to Wynn's job costs and bid calculations (Pltf. Ex. 7, 31, and 35);
6. The "scope" letter (Def. Ex. 4);
7. Phone logs (Def. Ex. 29, 31, 34, and 37); and
8. Onsite delay damages (Def. Ex. 55, 124, 127, and 130).

## Background

This litigation arises out of a construction contract awarded to Defendant Wynn Construction Company by the United States Army Corps of Engineers in July 1999. Under the contract, Wynn was to construct a spillway on the Tenkiller Lake Dam project. Wynn issued a

1

purchase order to Steel-Fab for the construction and delivery of five tainter gate hoists and housing units. The purchase order price was $1,000,000 if Steel-Fab's proposed design was used and $1,126,000 if the Corps rejected the alternative design. The Corps did, in fact, reject the design and the price was set at $1,126,000. Wynn has paid Steel-Fab $672,070 against the purchase order price, and Steel-Fab has sued for the remainder. However, Wynn claims that Steel-Fab's delivery was deficient and untimely, such that Wynn does not owe anything further on the contract. Wynn also claims additional damages of $809,082.95 as a result of Steel-Fab's breach.[1]

## Discussion

### 1. The Eichleay formula.

Steel-Fab moves to prohibit Wynn from using the Eichleay formula to calculate its home office overhead damages on the grounds that such calculation is "an extraordinary remedy which is specifically limited to contracts affected by government-caused suspensions, disruptions and delays of work," and that damages in this case must be established with greater particularity. *See* C.B.C. Enters., Inc. v. U.S., 978 F.2d 669, 675 (Fed. Cir. 1992). In response, Wynn argues that the **fact** of damages will be proven to the requisite degree of specificity, but the **amount** of damages need not be exact, and may be properly estimated using the Eichleay formula.

---

[1] The primary issue in this case appears to be **how** to calculate Wynn's damages, if they are entitled to same. Although Wynn can certainly put on evidence detailing any costs attributable to Steel-Fab's breach, and can suggest a reasonable amount of damages based on this evidence, the jury must ultimately decide the amount, if any, it will award. Thus, it seems that many of the issues addressed in the parties' motions in limine could best be resolved in the jury instructions than herein. The parties are therefore directed to resubmit agreed and/or proposed instructions on the issue of damages, in conformity with these rulings.

It is well-settled that reimbursement for home office overhead costs incurred, to the extent such costs are reasonably foreseeable and properly allocated, are recoverable as damages in a breach of construction contract case. *See* 3 A.L.R. 3d 689, § 2(b). Accordingly, in the instant case, Wynn may seek **reimbursement costs** for wasted or otherwise incurred overhead proximately caused by Steel-Fab's alleged breach.[2]

In order to use Eichleay to calculate such damages, a contractor must establish a compensable delay and an inability to mitigate damages by performing other work. *See* C.B.C. Enters., 978 F.2d 673-74. In most cases cited by the parties and reviewed by the Court, a "compensable delay" is one caused by the government. In other cases, however, contractors have been allowed to recover from subcontractors. *See* 3 A.L.R. 3d 689, § 9 (citing cases relating to "expenses wasted in connection with work stoppage or delay caused by other party"); Jeffrey W. Watson, "Unabsorbed Overhead Costs and the Eichleay Formula," 147 Mil. L. Rev. 262 (Winter 1995) ("The Eichleay formula is not reserved exclusively for government contracts.") (citing Aircraft Gear Corp. v. Kaman Aerospace Corp., 875 F. Supp. 485 (N.D. Ill. 1995)). In such cases, however, the delay must generally be sudden and unexpected in nature and indefinite in duration. *See, e.g.,* Williams Enters., Inc. v. Sherman R. Smoot Co., 938 F.2d 230 (D.C. Cir. 1991) (allowing general contractor to collect Eichleay damages from subcontractor whose negligence caused a steel support frame to collapse, taking the entire building down with it and killing one worker and injuring two); C.B.C. Enters., 978 F.2d at 675 ("Where no element of uncertainty is imposed on the contractor, use of the Eichleay formula to calculate extended home

---

[2]Reimbursement costs are distinguished from lost profits, although Wynn assures the Court that it is not attempting to use Eichleay to boost its cost efficiency or otherwise increase its profit margin.

3

office overhead is not permissible.").

In this case, the project was already several days overdue at the time of Steel-Fab's late delivery. Further, the delivery date in question was re-negotiated at least once, which indicates that Steel-Fab's failure to perform was neither sudden nor unexpected. It is unclear whether Steel-Fab's breach resulted in a complete "standby," or if Wynn was able to continue work on other parts of the project; however, for Eichleay damages to be appropriate, the contractor must generally show "effective suspension of much, if not all, of the work on the contract." P.J. Dick v. Principi, 324 F.3d 1364, 1371 (Fed. Cir. 2003). "As long as the contractor is able to continue performing the contract, although not in the same way or as efficiently or effectively as it had anticipated it could do so, it can allocate a portion of its indirect costs to that contract [and t]here is accordingly no occasion in that situation to resort to recovery under the Eichleay formula, which is an extraordinary remedy." Charles G. Williams Constr. v. White, 326 F.3d 1376, 1380 (Fed. Cir. 2003) (internal quotations and citations omitted).

Even if Wynn can demonstrate a "standby" situation (*i.e.*, a substantial delay of indefinite duration), it must also prove that (1) Steel-Fab was the sole source of the delay, and (2) Wynn did, in fact, incur additional overhead. P.J.Dick, 324 F.3d at 1373. If Wynn can establish that Steel-Fab was the sole source, it must also prove by a preponderance of the evidence the number of days attributable to Steel-Fab's breach, and that the breach affected the project's "critical path." Jackson Constr. v. U.S., 62 Fed. Cl. 84, 97-98 (2004). Costs can only be recovered if Wynn's direct billings were less than they would have been but for the delay (*i.e.*, the overhead was not absorbed). P.J. Dick, 324 F.3d at 1374. Moreover, because Wynn claims that Steel-Fab is liable for overhead damages well before the project deadline, Wynn must show that, from the

4

outset of the contract, it "(1) intended to complete the contact early; (2) had the capability to do so; and (3) actually would have completed early," but for the breach. *See* West v. All State Boiler, Inc., 146 F.3d 1368, 1379 (Fed. Cir. 1998). Steel-Fab may then rebut Wynn's claim for damages by showing that Wynn failed to mitigate its damages. P.J. Dick, 324 F.3d at 1373. Wynn must then demonstrate that it was unable to obtain sufficient replacement work. Id. In other words, "a contractor is not simply entitled to stand by whenever a delay arises – rather the contractor must actually be unable to take on other work, so that the delay causes unavoidable damages." Aircraft Gear Corp., 875 F. Supp. at 497. Thus, Wynn must satisfy "exacting requirements" in order to show entitlement to Eichleay damages. P.J. Dick, 324 F.3d at 1373.

If Wynn could meet its burden, Eichleay damages would be calculated according to the following formula:

1. Contract billings divided by total billings for the contract period, multiplied by total overhead for the contract period, equals overhead allocable to the contract.

2. Allocable overhead divided by total days of contract performance equals the daily overhead rate.

3. The daily overhead rate multiplied by the number of days delayed equals the amount claimed.

Appeal of Eichleay Corp., ASBCA No. 5183, 1960 WL 538 (1960). The Court notes, however, that it was unable to find any case in the Tenth Circuit in which the Eichleay formula was actually used, and that the state of Oklahoma has not adopted Eichleay. In Oklahoma, the measure of damages for a breach of contract claim "is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby," which amount "must be ascertainable in some matter other than by mere speculation, conjecture or surmise, and by

5

reference to some **definite** standard." *See* <u>John A. Henry & Co. v. T.G.&Y. Stores</u>, 941 F.2d 1068, 1071 (10th Cir. 1991) (emphasis added); *see also* 23 Okla. Stat. § 21. Although Wynn correctly points out that the <u>Eichleay</u> formula is a judicially approved standard, the Court does not find that such standard is "definite" as required under Oklahoma law. *See, e.g.,* <u>C.B.C. Enters.</u>, 978 F.2d at 675 ("[T]he <u>Eichleay</u> formula only roughly approximates extended home office overhead."). Moreover, the Court notes that use of the <u>Eichleay</u> formula generally results in a greater windfall than application of a fixed percentage mark-up formula. *See, e.g.,* <u>id.</u> at 674.

In short, absent "extraordinary" circumstances not yet revealed to the Court, the use of <u>Eichleay</u> is probably inappropriate here. Plaintiff's Motion in Limine (docket number 39) is therefore GRANTED and Wynn is prohibited from introducing evidence or testimony concerning extended home office overhead damages by use of the <u>Eichleay</u> formula.

### 2. The Johnson Machine v. Wynn litigation

Wynn moves to exclude Plaintiff's exhibit 26, which consists of Wynn's answers to interrogatories and the pleadings in the suit filed by Johnson Machine (the manufacturer of the tainter gates) against Wynn in the United States District Court for the Southern District of Iowa, on grounds that these documents would confuse and unduly prejudice the jury. In response, Steel-Fab argues that these documents are relevant to the issue of delay and should therefore be admitted.[3]

---

[3] Wynn argues that any evidence of delays which occurred earlier than January 2003, when Steel-Fab was ultimately supposed to deliver the hoist equipment, are immaterial. However, if Johnson Machine (or any other subcontractor) was required to perform **before** Steel-Fab could perform, but did not, any damages caused by Steel-Fab's subsequent delay could perhaps be mitigated. Further, if Johnson Machine (or any other subcontractor) was still in arrears **after** January 2003, Steel-Fab cannot be said to be the "sole guilty party" for delaying completion of the project, as Wynn claims.

6

The Court notes that a statement which, at the time of its making, tended to render invalid a claim by the declarant against another is admissible as an exception to the hearsay rule if the witness who made the statement is unavailable, as is prior testimony in the same or a different proceeding. Fed. R. Evid. 804(b)(1) and (3). Although neither of these characterizations actually captures the nature of the evidence offered by Steel-Fab, the Court finds by analogy that, because the declarant is available here, the documents may only be used to impeach the witness and/or refresh his memory. The Court further finds that the documents are relevant to the issue of delay, and that any concerns about confusion or prejudice may be addressed during the trial. Wynn's Motion in Limine (docket number 42) is therefore DENIED IN PART.

### 3. Documents relating to Steel-Fab's alternative design.

Wynn moves to exclude Plaintiff's exhibits 10-A through 10-K, which relate to the alternative gate hoist design proposed by Steel-Fab, pursuant to Fed. R. Evid. 402 and/or 403. Wynn argues that the only possible relevance these documents would have – the ultimate purchase order price – has been stipulated by the parties, and that the documents' admission would therefore waste time and cause confusion. In response, Steel-Fab argues that the documents are relevant to show that Steel-Fab's final plans and specifications for the project were delayed for approximately one year while the Corps, with Wynn's full knowledge and consent, considered the alternative design. Steel-Fab further alleges that Wynn delayed in submitting drawings to the Corps and responses to Steel-Fab, and thus contributed to the overall delay in the completion of the project.

Because the proximate cause of delay is a central issue to Wynn's recovery on its counterclaim, the Court finds that these documents are admissible as to that issue, subject to any

objections raised at trial and/or any limiting instruction proposed by the parties. Wynn's Motion in Limine (docket number 42) is therefore DENIED IN PART.

### 4. Wynn's "cut-and-pasted" letter.

Wynn moves to exclude Plaintiff's exhibit 28-E, which is a "cut-and-pasted" letter from Wynn to the Corps. Wynn argues that this letter is not relevant to any claim or defense, but is only being offered by Plaintiff to raise the specter of fraud. Wynn also complains that the exhibit contains two pages which do not belong to the identified documents. In response, Steel-Fab argues that Wynn sent the letter to the Corps to convince them to accept the job, but that the Corps resisted, thereby causing additional delay to the project. Steel-Fab also argues that the letter goes to Wynn's credibility.

To the extent that the letter goes to the issue of delay, the Court finds that it could be admissible. However, Steel-Fab did not plead fraud as a defense, such that the character of the letter as "doctored" or "forged" is irrelevant and would be unduly prejudicial. Because any proof of delay afforded by the letter would necessarily require a discussion of its "deceptive" nature, the Court finds that its probative value is substantially outweighed by the danger of unfair prejudice and confusion of the issues. Plaintiff's exhibit 28-E is therefore excluded pursuant to Fed. R. Evid. 403, and Defendant's Motion in Limine (docket number 42) is GRANTED IN PART.

### 5. Documents relating to Wynn's job costs and bid calculations.

Wynn moves to exclude Plaintiff's exhibit 7, which is its bid calculations and estimates summary, exhibit 31, which identifies Wynn's job cost centers, and exhibit 35, which is Wynn's internal job cost report. Wynn argues that these documents are irrelevant, because the parties'

8

contractual obligations are the same whether Wynn overbid or underbid the project, or made or lost profit on the job. In response, Steel-Fab argues that these documents are relevant to the calculation of damages, and go directly to Steel-Fab's defense to Wynn's counterclaim because they tend to show that Wynn itself was responsible for delays and overruns due to mismanagement of the project.

The Court finds these documents to be relevant to the issues of delay and damages and therefore admissible. Defendant's Motion in Limine (docket number 42) is DENIED IN PART.

### 6. The "scope" letter.

Steel-Fab moves to exclude Defendant's exhibit 4, which is a "scope" letter sent by Steel-Fab to Wynn detailing the work, services, equipment and materials it proposed to furnish if selected as the subcontractor for this project. Steel-Fab argues that the letter is irrelevant, in large part because it focuses on the alternative (rejected) design which Wynn believes to be irrelevant, and because the letter itself was not ultimately incorporated into the purchase order. Wynn does not dispute that the letter is not part of the contract, but argues that it is admissible to interpret the contract and provide insight into the parties' intentions.

Under Oklahoma law, "pre-contract negotiations and oral discussions are merged into and superseded by the terms of an executed writing," First Nat'l Bank v. Honey Creek Entertainment Corp., 54 P.3d 100, ___ (Okla. 2002) (citing 15 Okla. Stat. § 137), and "parol evidence cannot vary, modify or contradict the terms of an executed written agreement," id. (citing Ollie v. Rainbolt, 669 P.2d 275, 279 (Okla. 1983). In this case, Wynn admits that the purchase order does not expressly address Steel-Fab's obligations to assemble the equipment, but merely requires Steel-Fab to furnish necessary materials. Wynn claims that Steel-Fab represented in the

9

"scope" letter that it would, in fact, assemble the hoists but, nevertheless, the housing assemblies were allegedly delivered unassembled and short of parts.

Because the **modification** of the purchase order is at issue here, the Court finds that any discussion of contract **negotiations** would be potentially confusing to the jury, as well as improper under the parol evidence rule. Defendant's exhibit 4 is therefore excluded pursuant to Fed. R. Evid. 403 and the parol evidence rule, and Plaintiff's Motion in Limine is GRANTED.[4]

### 7. Phone logs.

Steel-Fab moves to exclude Defendant's exhibits 29, 31, 34, and 37, which are identified as "phone logs," because it believes that these documents are not business records maintained in the normal course of business and may have been created especially for trial. In response, Wynn argues that the author of the phone logs will testify to the contrary, such that the documents will be admissible under Fed. R. Evid. 803(6), and that the documents are, in any event, admissible under Fed. R. Evid. 803(5).

From the parties' descriptions of the documents, the Court finds them to be more akin to personal notes taken by one party to a phone call rather than a formal phone log, which would be more likely classified as a record of regularly conducted business activity. The Court therefore finds these documents to be potentially admissible under Fed. R. Evid. 803(5) as a recorded recollection, but not as a business record. Accordingly, Plaintiff's Motion in Limine (docket number 40) is GRANTED IN PART, and Wynn is hereby prohibited from offering these documents as exhibits under Fed. R. Evid. 803(6). To the extent that said documents may be

---

[4]Defendant responded to Plaintiff's objection to the scope letter at docket number 42, and Plaintiff replied at docket number 44. The Court did not locate a motion in limine on this issue on the docket, but considers the issue fully briefed as stated above.

admissible under Fed. R. Evid. 803(5), Plaintiff's Motion is also DENIED IN PART.

### 8. Onsite delay damages.

Steel-Fab moves to exclude Defendant's exhibits 55, 124, 127, and 130, which document extended field office overhead damages. In support of its motion, Steel-Fab argues that Wynn cannot prove entitlement to the delay damages and these documents would therefore be irrelevant, confusing, and prejudicial. Although the Court finds this argument to be speculative at best, the Court also finds the proposed exhibits to be more conclusory than probative of any particular fact, such that they might be appropriate for use as demonstrative aids during closing arguments, but **not** as evidence. While these documents show the total amount Wynn seeks to recover, they do not in any way show **why** Wynn is entitled to these amounts. Wynn states that it "can and will prove" that (1) Steel-Fab's breach was the sole cause of the delay damages claimed, (2) the breach affected the critical path, and (3) Wynn would not have incurred the costs listed in the documents but for Steel-Fab's breach; however, Wynn does not explain how the proposed exhibits will assist it in making this proof. Plaintiff's Motion in Limine (docket number 41) is therefore GRANTED. Further, the Court cautions that these documents must conform to the Court's ruling on the Eichleay formula, *supra*, if they are to be used at all at trial.

### Conclusion

In keeping with these findings, parties are directed to avoid any evidence, arguments, comments, and questions designed to elicit information concerning information deemed inadmissible herein, and should so instruct their witnesses. All exhibits should be edited accordingly, consistent with this Order.

IT IS SO ORDERED this 2ⁿᵈ day of May 2006.

                                                                         _____
                                                                          James H. Payne
                                                                          Chief United States District Judge